<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: COMPENSATION OF MANAGERIAL, PROFESSIONAL AND TECHNICAL EMPLOYEES ANTITRUST LITIGATION | : : : : : : : : : | MDL DOCKET NO. 1471<br><br>MASTER DOCKET NO. 02-CV-2924 (GEB)<br><br>**OPINION** |

<u>**BROWN, District Judge**</u>

This matter comes before the Court upon Plaintiffs' motion for class certification pursuant to Federal Rules of Civil Procedure Rule 23(b)(1) and (b)(2), and Plaintiffs' appeal of Magistrate Judge Hughes's December 29, 2004 Order denying Plaintiffs' application for supplemental discovery.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  The Court, having considered the parties' submissions, as well as oral argument heard on September 27, 2005, and for the reasons set forth below, will deny Plaintiffs' motion for class certification and affirm Magistrate Judge Hughes's December 29, 2004 Order.


## I.     BACKGROUND

This case is a consolidated multidistrict action based on antitrust claims brought by several managerial, professional and technical ("MPT") employees of certain major U.S. oil companies ("Plaintiffs") against those oil companies ("Defendants").  This case originated from four separate lawsuits filed in the Southern District of New York, the Eastern District of Texas and the District of New Jersey.  These lawsuits were consolidated before this Court on June 20, 2002.

Plaintiffs claim that, through the Oil Industry Group ("OIG"), Defendants "participated, and continue to participate, in a highly-organized, carefully-managed, exchange of detailed salary information, which plaintiffs contend is unlawful."  (Pl. Br. at 2.)  According to Plaintiffs,

Defendants' alleged exchanges of information concerning MPT employees' compensation depressed or slowed the rate of increase of Plaintiffs' salaries in violation of Section 1 of the Sherman Act.

On November 21, 2003, Plaintiffs moved for certification of the following proposed class:

> All salaried (FLSA-exempt) U.S.-based employees of any of the defendants (or their divisions or subsidiaries) who are currently employed as managerial, professional, or technical employees in jobs designated with Exxon salary classification levels CL 20-29, or equivalent salary classification levels of one of the other defendants, and who have been employed in the oil/petrochemical industry for at least two years.  Excluded from the class are all of defendants' human resources personnel who participated directly in the information exchanges that are the subject of the complaints in this action.

("Proposed Class").  (Pl. Br. at 1.)  Plaintiffs have moved for class certification once already, pursuant to Federal Rules of Civil Procedure Rule 23(b)(3), which motion this Court denied.  *In re Compensation of Managerial, Professional, and Technical Employees Antitrust Litig.*, No. 02 Civ. 2924 (D.N.J. May 22, 2003).  The Court denied Plaintiffs' first motion for class certification for their failure to satisfy the predominance requirement of Rule 23(b)(3).  *Id.* at 4-8.  The current Proposed Class differs from that proposed in Plaintiffs' original motion in two respects:  (1) it is limited to current MPT employees; and (2) it seeks injunctive or declaratory relief only.  Plaintiffs seek certification of the Proposed Class pursuant to Rule 23(b)(1) and (b)(2).

Plaintiffs also appeal an order by Magistrate Judge Hughes denying their request for supplemental discovery to support their motion for class certification.  On November 5, 2004, Judge Hughes denied Plaintiffs' original application for supplemental class discovery, but permitted Plaintiffs to request "supplemental class discovery specifically addressed to factual issues raised in Defendants' Opposition to Plaintiffs' second motion for class certification, which discovery shall be permitted only upon a showing of good cause."  (Order, November 5, 2004.)  On November 23, 2004, Plaintiffs requested permission to take supplemental discovery "directed to the factual issue of Defendants' market power."  (Pl. Letter Br., November 23, 2004.)  After considering the parties' submissions and conducting a hearing on December 7, 2004, Judge

Hughes denied Plaintiffs' application for supplemental discovery.  (Order, December 29, 2004.) Plaintiffs appeal that decision.

## II.    DISCUSSION

### A.    Applicable Law

The Court must first determine whether to apply the law of the Third Circuit or, if different, the law of the circuit from which each of the consolidated cases originated.  Where the claim arises under federal law, as is the case here, the appropriate course is to apply the law of the transferee court.  In considering the issue, the D.C. Circuit Court of Appeals recognized that the pretrial nature of multidistrict transfers suggests that the law of the origin circuit should apply, while the presumed uniformity of federal law across circuits suggests that doing so would be unnecessary.  *See In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171, 1174-1176 (D.C. Cir. 1987).  After considering these competing views, the court decided that "'the transferee court [should] be free to decide a federal claim in the manner it views as correct without deferring to the interpretation of the transferor circuit.'"  *Id.* at 1174 (quoting Marcus, *Conflict Among Circuits and Transfers Within the Federal Judicial System*, 93 Yale L.J. 677, 721 (1984)).  The court reasoned that "it is logically inconsistent to require one judge to apply simultaneously different and conflicting interpretations of what is supposed to be unitary federal law." *Id.* at 1775-76.  *See also In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429, 439 n.16 (D.N.J. 2000) ("When dealing with cases that have been consolidated for pretrial proceedings pursuant to an order of the MDL Panel under 28 U.S.C. § 1407, the law of the transferor forum merits close attention, but should not be read to have stare decisis effect in a transferee forum situated in another circuit") (citing *In re Korean Air Lines Disaster*, 829 F.2d at 1176).  It should also be noted that the parties in this case have cited mostly to Third Circuit cases in their briefs.  For these reasons, the Court will rely primarily on cases in the Third Circuit in deciding the instant motion and appeal.

### B.   Class Certification

#### 1.   Standard of Review

In deciding whether to grant a motion to certify a class, a court must engage in "a thorough examination of the factual and legal allegations."  *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001).  "'It may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'"  *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  "'Before deciding whether to allow a case to proceed as a class action, . . . [the court] should make whatever factual and legal inquiries are necessary under Rule 23.'"  *Id.* (quoting *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)).  It is therefore necessary to consider the nature of Plaintiffs' claims before coming to the question of whether to grant certification of the Proposed Class.

#### 2.   Plaintiffs' Antitrust Claims

Plaintiffs' claims are based on Section 1 of the Sherman Act, which states:  "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  "To establish a violation of Section 1, a plaintiff must prove:  (1) concerted action by the defendants; (2) that produced anti-competitive effects within the relevant product and geographic markets; (3) that the concerted actions were illegal; and (4) that it was injured as a proximate result of the concerted action."  *Gordon v. Lewistown Hosp.*, 423 F.3d 184, 207 (3d Cir. 2005) (citations omitted).

Courts have interpreted Section 1 of the Sherman act as prohibiting two types of conduct in restraint of trade:  (1) conduct that is unreasonable *per se*; and (2) conduct that violates the "rule of reason."  *See F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 458 (1986).  Plaintiffs' claims are based on Defendants' alleged violation of the rule of reason aspect of Section 1.  "Under this test, plaintiffs have the burden of establishing that, under all the circumstances, 'the

4

challenged acts are unreasonably restrictive of competitive conditions' in the relevant market."
*Eichorn v. AT&T Corp.*, 248 F.3d 131, 138 (3d Cir. 2001) (quoting *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 28 (1911)).  "'An analysis of the reasonableness of particular restraints includes the consideration of the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects, and the history of the restraint and the reasons for its adoption.'"  *Id.* (quoting *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 607 (1972)).

In litigating their claims, Plaintiffs will have to prove the relevant product market, which is "defined as those 'commodities reasonably interchangeable by consumers for the same purposes.'"  *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1992) (quoting *U.S. v. E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956)).  "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it."  *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir.), *reh'g denied*, 129 F.3d 724 (3d Cir. 1997), *cert. denied*, 523 U.S. 1059 (1998) (quoting *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962)).  "Cross-elasticity of demand exists if consumers would respond to a slight increase in the price of one product by switching to another product."  *Todd v. Exxon*, 275 F.3d 191, 201-02 (2d Cir. 2001).  Factors to consider in defining the relevant market include the price, use and qualities of the product.  *Tunis Bros.*, 952 F.2d at 722.  Plaintiffs have the burden to establish the relevant product market.  *Id.* at 724; *Queen City Pizza*, 124 F.3d at 436.

Here, the relevant product market would be the market for employment opportunities available to members of the Proposed Class.  In *Todd v. Exxon*, one of the cases consolidated in this action, the Second Circuit Court of Appeals explained the nature of Plaintiffs' antitrust claims.  The court observed that Plaintiffs' claims are based on allegations of buyer-side anti-competitive behavior by Defendants, i.e. the exercise of monopsony or oligopsony power.  *Todd*, 275 F.3d at 201-02.  Compared to traditional seller-side antitrust cases, the analysis here is "reversed" because "the market is not the market for competing sellers but of competing buyers."

*Id.* at 202.  In other words, "[t]his market is comprised of buyers who are seen by sellers as being reasonably good substitutes."  *Id.*  In the course of litigating their claims, then, Plaintiffs will have to prove the conditions of the relevant product market, namely, the market of employment opportunities available to them.  *See id.* ("At issue is the interchangeability, from the perspective of an MPT employee, of a job opportunity in the oil industry with, for example, one in the pharmaceutical industry").

### 3.  General Requirements for Class Certification

"To be certified, a class must satisfy the prerequisites of Rule 23(a) and the 'parties seeking [class] certification must also show that the action is maintainable under Rule 23(b)(1), (2), or (3).'" *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998), *cert. denied*, 526 U.S. 1114 (1999) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Plaintiffs seek certification pursuant to subdivisions (b)(1) and (b)(2).

In their opposition to Plaintiffs' motion for class certification, Defendants have primarily argued that Plaintiffs fail to satisfy the requirements of subdivisions (b)(1) and (b)(2).  The Court will therefore begin by discussing the (b)(1) and (b)(2) requirements.

### 4.  Requirements for (b)(1) Class Certification

A class is maintainable under Rule 23(b)(1) if:

the prosecution of separate actions by or against individual members of the class would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

> (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1).  "Rule 23(b)(1) defines two related types of class actions, both designed

to prevent prejudice to the parties arising from multiple potential suits involving the same subject matter." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 396 (E.D. Pa. 2001).

### a.       Subdivision (b)(1)(A)

Subdivision (b)(1)(A) is used "to obviate the actual or virtual dilemma which would . . . confront the party opposing the class" if separate lawsuits resulted in "incompatible standards" for that opposing party.  Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. 69, 100 (1966).  "Basically the phrase 'incompatible standards of conduct' is deemed to refer to the situation in which different results in separate actions would impair the opposing party's ability to pursue a uniform continuing course of conduct."  Wright, Miller & Kane, *Federal Practice and Procedure: Civil 3d* § 1773 (2005).  Plaintiffs fail to satisfy (b)(1)(A) for two reasons.

First, separate lawsuits would not result in incompatible standards of conduct for Defendants.  Plaintiffs seek to enjoin Defendants' sharing of compensation information with respect to MPT employees generally.  They argue that separate lawsuits could result in incompatible standards of conduct, i.e. some cases permitting the sharing of such information and others prohibiting the same.  But if members of the Proposed Class proceeded in separate lawsuits, any injunctions that might be issued could be limited to the characteristics of the parties in the particular lawsuit.  For example, if a geologist succeeded in a lawsuit against Defendants and was granted injunctive relief, that relief could be fashioned to prohibit Defendants' sharing of information concerning geologists only.  At the same time, a labor attorney, for example, might fail in an identical claim, so that Defendants would be able to continue sharing information concerning labor attorneys while not doing so with respect to information about geologists.  Injunctions could be tailored in myriad additional ways based on other employee characteristics (e.g. seniority), or the type of compensation information shared.

Second, (b)(1)(A) was designed to protect the interests of the party opposing class

certification, namely, Defendants.  Rather than seek protection through (b)(1)(A), Defendants oppose Plaintiffs' class certification motion.  The fact that Defendants "are not seeking to invoke the protection of the rule further indicates that that provision is inapposite here."  *Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 174 F.R.D. 332, 354 (D.N.J. 1997).  For these reasons, certification of the Proposed Class based on subdivision (b)(1)(A) is inappropriate in this case.

### b.      Subdivision (b)(1)(B)

Certification under subdivision (b)(1)(B) is also inappropriate here.  Subsection (b)(1)(B) is generally used where there is a "common fund" for damages and payment from the fund to some members of a class would have practical effects on the interests of other members.  *PBA Local No. 38 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 103 (D.N.J. 1991) (denying certification under (b)(1)(B) because "there is no 'common fund' or anything akin thereto, the most common use of this subsection, which indicates that prejudice would result as a practical matter to members not party to the adjudication"); *Kekich v. Travelers Indem. Co.*, 64 F.R.D. 660, 667 (W.D. Pa. 1974) (finding class certification under (b)(1)(B) was not appropriate because the provision was "intended primarily to facilitate situations where class members have interests in a common organization, fund or contract").

Here, there is no concern that individual adjudication by members of the Proposed Class would deplete a limited common fund, especially in light of the fact that Plaintiffs seek only injunctive or declaratory relief.  Moreover, this case does not resemble the situations described by the Advisory Committee where certification under (b)(1)(B) would be warranted.  Those situations include:  an action by policy holders against a fraternal benefit association attacking a financial reorganization of the society, an action by shareholders to compel the declaration of a dividend and an action by a creditor to set aside a fraudulent conveyance when the debtor's assets are insufficient to pay all creditors' claims.  Rules Advisory Committee Notes to 1966 Amendments to Rule 23, 39 F.R.D. at 101.  *See also Ortiz v. Fibreboard Corp.*, 527 U.S. 815,

842 (1999) ("the Advisory Committee looked cautiously at the potential for creativity under Rule 23(b)(1)(B), at least in comparison with Rule 23(b)(3). . . . the Committee was consciously retrospective with intent to codify pre-Rule categories under Rule 23(b)(1) . . . .").  Class certification under (b)(1)(B) is therefore inappropriate.

### 5.        Requirements for (b)(2) Class Certification

A class action is maintainable under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole . . . ."  Fed. R. Civ. P. 23(b)(2).  "Subsection (b)(2) class actions are 'limited to those class actions seeking primarily injunctive or corresponding declaratory relief.'"  *Barnes*, 161 F.3d at 142 (quoting 1 *Newberg on Class Actions* § 4.11, at 4-39).

Class certification under (b)(2) requires that the proposed class be cohesive.  *Barnes*, 161 F.3d at 143.  In *Barnes*, the Third Circuit Court of Appeals explained that the cohesiveness requirement for (b)(3) classes, as articulated by the Supreme Court in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), applies to (b)(2) classes as well.  *Id.* at 142.  According to the Court of Appeals, "[w]hile 23(b)(2) class actions have no predominance or superiority requirements, it is well established that the class claims must be cohesive."  *Id.* at 143.

The *Barnes* court noted two reasons why courts must determine whether a proposed (b)(2) class is cohesive before certifying the class.  "First, unnamed members with valid individual claims are bound by the action without the opportunity to withdraw and may be prejudiced by a negative judgment in the class action."  *Id.* (citing *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 628 (E.D. Pa. 1976)).  "[T]he court must ensure that significant individual issues do not pervade the entire action because it would be unjust to bind absent class members to a negative decision where the class representatives's claims present different individual issues than the claims of the absent members present."  *Id.*  "Indeed, a (b)(2) class may

require more cohesiveness than a (b)(3) class . . . because in a (b)(2) action, unnamed members are bound by the action without the opportunity to opt out." *Id.* at 142-43. Second, "'the suit could become unmanageable and little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently." *Id.* at 143 (quoting *Santiago*, 72 F.R.D. at 628)). To avoid these problems, the Third Circuit has "committed to the district court the discretion to deny certification in Rule 23(b)(2) cases in the presence of 'disparate factual circumstances.'" *Geraghty v. United States Parole Comm'n*, 719 F.2d 1199, 1205–06 (3d Cir. 1983).

The Court finds that the Proposed Class is not cohesive and therefore fails to satisfy the requirements of subdivision (b)(2). Plaintiffs' claims raise a number of individualized issues. The Proposed Class, defined as current MPT employees in the oil industry employed for at least two years, includes approximately forty-thousand (40,000) members, and encompasses more than four-thousand (4,000) different jobs (including, for example, attorneys, geologists, pilots and engineers) and a wide range of education levels (ranging from high school to Ph.D. degrees). In proving the relevant product market, Plaintiffs must demonstrate the interchangeability, "from the perspective of an MPT employee, of a job opportunity in the oil industry with [those in other industries]." *Todd*, 275 F.3d at 202. But Plaintiffs do not claim that members of the Proposed Class are similar with respect to their employment opportunities outside the oil industry. Based on the diversity of jobs encompassed by the Proposed Class, it appears that the employment opportunities that members of the class would consider interchangeable would differ in important respects, including salary, job requirements and industries in which they are offered. *See Tunis Bros.*, 952 F.2d at 722 ("Factors to be considered include price, use and qualities").

These concerns were recognized by the Second Circuit Court of Appeals in the *Todd* case. Although the court found that the plaintiffs alleged an adequate claim, it also explicitly noted that the plaintiffs would face obstacles in seeking to certify the Proposed Class. *Todd*, 275 F.3d at 202 n.5 ("The observation by the district court and defendants about the large differences

10

among the various MPT jobs is better understood . . . as indicating that not all MPT employees are affected by the conspiracy in the same way – thus creating potential difficulties with class certification").  The *Todd* court identified the same problems that this Court finds troubling. According to the court:

> [T]he different types of employees will differ in how they must prove the interchangeability among employers.  For example, as the district court and defendants point out, oil industry employers may not be interchangeable with pharmaceutical industry employers from the standpoint of a petroleum geologist, but the two may be more interchangeable from the standpoint of a labor lawyer.

*Id.*  Moreover, even if Plaintiffs are ultimately able to demonstrate that Defendants exercised market power with respect to all the jobs included in the Proposed Class, "the means of proof may be quite different; at trial the geologists must present evidence of the relative job prospects for geologists outside the oil industry, while the lawyers must explore the legal job market." *Id.* This Court raised similar concerns in its earlier denial of Plaintiffs' first class certification motion pursuant to (b)(3).  *In re Compensation of Managerial, Professional, and Technical Employees Antitrust Litig.*, No. 02 Civ. 2924, slip op. at 7 (D.N.J. May 22, 2003) (finding that an employee's "'ability to seek employment in other industries, salary history, [and] educational and other qualifications' are but a few of many factors that cannot be shown with common proof").

Plaintiffs make several arguments for finding the Proposed Class to be cohesive.  For the following reasons, this Court finds those arguments unpersuasive.

### a.   Whether the Proposed Class Is Cohesive in the Absence of Individualized Issues Concerning Damages

Plaintiffs argue that the Proposed Class is cohesive because it would seek injunctive or declaratory relief only.  As a result, there would be no individualized issues concerning damages, and, according to Plaintiffs, class certification under (b)(2) would therefore be appropriate. Plaintiffs' argument fails, however, because even in the absence of damages, other individualized issues remain.

Generally, classes that seek injunctive or declaratory relief only do not raise

individualized issues concerning damages, thereby improving the likelihood of cohesiveness of the class.  *See Baby Neal v. Casey*, 43 F.3d 48, 64 (3d Cir. 1994) ("The fact that the plaintiffs in this case seek only injunctive and declaratory relief, not individual damages, further enhances the appropriateness of the class treatment [under Rule 23(b)(2)]").  *See also Wilson v. The United Int'l Investigative Servs. 401(K) Savings Plan*, 2002 WL 734339, at \*5 (E.D. Pa. April 23, 2002) ("Cohesion is presumed where plaintiffs request class-wide relief; in contrast, where monetary relief is requested, cohesion is less apparent, as awarding damages normally entails examination of individual claims").  But even though non-damages cases generally implicate fewer individualized issues than ones involving damages, there may still be significant individualized issues that would bar class certification.

In *Barnes*, the Third Circuit Court of Appeals noted two situations in which class certification under (b)(2) may be inappropriate, regardless of the relief being sought – cases "where the class representatives's claims present different individual issues than the claims of the absent members present," and ones where "little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently."  *Barnes*, 161 F.3d at 143. To prevent these situations, district courts are given the "discretion to deny certification in Rule 23(b)(2) cases in the presence of 'disparate factual circumstances.'" *Id.* (quoting *Geraghty*, 719 F.2d at 1205-06).

Plaintiffs argue that *Barnes* in inapposite because it was a mass tort personal injury case and the relief sought was medical monitoring, relief that required individualized findings not at issue here.  (Pl. Am. Reply Br. at 16-17.)  But these differences are immaterial.  The Court of Appeals in *Barnes* addressed class certification under Rule 23(b)(2) generally, without distinguishing cohesiveness with respect to the type of claim or the specific relief being sought. The court's decision was based on its concern about the no opt-out aspect of the rule.  *See Barnes*, 161 F.3d at 142-43 ("a (b)(2) class may require more cohesiveness than a (b)(3) class . . . because in a (b)(2) action, unnamed members are bound by the action without the opportunity to

opt out"). As in *Barnes* (and (b)(2) classes generally), members of the Proposed Class would not be able to opt-out if certification were granted. The concerns expressed in *Barnes* are therefore applicable to this case.

Plaintiffs cite a number of cases where a class was certified or found to be certifiable under (b)(2) in the absence of individualized issues relating to damages. *See Baby Neal*, 43 F.3d 48; *Allen v. Int'l Truck and Engine Corp.*, 358 F.3d 469 (7th Cir. 2004); *Osgood v. Harrah's Entm't, Inc.*, 202 F.R.D. 115 (D.N.J. 2001); *Ketchum v. Sunoco, Inc.*, 217 F.R.D. 354 (E.D. Pa. 2003); *Santiago*, 72 F.R.D. 619; *Yong Soon Oh v. AT&T Corp.*, 224 F.R.D. 357 (D.N.J.), *amended by*, 225 F.R.D. 142 (D.N.J. 2004); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147 (2d Cir. 2001); *Wilson*, 2002 WL 734339. These cases demonstrate that there are times where no individualized issues other than damages would bar class certification. They do not, however, demonstrate Plaintiffs' far broader conclusion – that individualized issues unrelated to damages may never arise. For the reasons already discussed, the Court finds that such individualized issues are raised in this case so that class certification under (b)(2) would be improper.

> **b.      Whether the Proposed Class Is Cohesive Because the Injunctive or Declaratory Relief Sought Is Against Employers' Policies**

Plaintiffs also cite a number of cases in which the court certified a class of employees under (b)(2) in claims against employers for their allegedly unlawful policies. *See Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998); *Robinson*, 267 F.3d 147; *Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004). These cases should be distinguished, however, because they concerned employment discrimination claims based on Title VII of the 1964 Civil Rights Act, and subdivision (b)(2) was designed primarily for civil rights actions. *See Baby Neal*, 43 F.3d at 59 (noting that (b)(2) was "designed specifically for civil rights cases seeking broad declaratory or

13

injunctive relief for a numerous and often unascertainable or amorphous class of persons").

Although (b)(2) class certification is not limited to civil rights cases, the difference in the nature of the claims is important to consider.  "The members of a (b)(2) class are generally bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender."  *Barnes*, 161 F.3d at 143 n.18 (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1155 (11th Cir. 1983) (internal quotations omitted)).  The requirements of (b)(2) are usually satisfied in actions for injunctive relief because they seek to redefine the relationship between the defendant and the class of claimants, so that the relief sought is "generally applicable to the class," as required by (b)(2).  *See Baby Neal*, 43 F.3d at 58-59.  That is true with civil rights cases in particular.  *See e.g. id.* at 64 (holding class certification under (b)(2) was appropriate because "this action aims to define the relationship of the defendants to the universe of children with whose care the defendants are charged").

Here, Plaintiffs want to stop Defendants from sharing compensation information concerning all members of the Proposed Class.  But enjoining that conduct would not provide relief generally applicable to the class because it would have potentially conflicting effects on different members.  Depending on the characteristics of the relevant job market, and thus the extent of Defendants' market power in that market, an employee may or may not be susceptible to a depression in wages.  In a job market where Defendants do not exercise market power, the sharing of compensation information may benefit employees.  *See United States v. United States Gypsum Co.*, 438 U.S. 422, 441 n.16 (1978) ("The exchange of price data and other information among competitors does not invariably have anticompetitive effects; indeed such practices can in certain circumstances increase economic efficiency and render markets more, rather than less, competitive").  Granting injunctive or declaratory relief to the Proposed Class as a whole could in theory injure employees in such competitive job markets.  Thus, even though Defendants allegedly shared information with respect to MPT employees generally, that conduct is not generally applicable in its potential effects.  In light of the nature of Plaintiffs' claims and the

14

relief sought, class certification under (b)(2) is inappropriate.

<blockquote>
c.        **Whether Professor David Card's Declaration Supports Plaintiffs' Argument That the Proposed Class Is Cohesive**
</blockquote>

Plaintiffs submit a declaration by Professor David Card, an expert in labor economics, in support of their argument that the Proposed Class is cohesive.  According to Professor Card, "labor markets are characterized by imperfect information, costly mobility, and other sources of frictions." (Card Decl. at 1.)  As a result, "each employer has some market power, and groups of employers that can co-ordinate their wage policies through information sharing potentially have greater market power."  (*Id*.)

Based on this view of labor markets, Professor Card proposes a method by which Plaintiffs may demonstrate that Defendants' information sharing resulted in a systematic reduction of wages for MPT employees.  Specifically, "data from proprietary cross-industry salary surveys could be used to examine whether or not the pay of MPT workers employed by the major oil companies were reduced by the information exchanges and other actions of the major oil companies since 1990."  (*Id.*)  "These surveys provide information on the differences in pay between the oil industry and general industry for workers in a limited range of positions."  (*Id.* at 1-2.)  According to Professor Card, because "salary structures at large companies tend to maintain relative salary differentials between various occupations, . . . differences for workers at other salary ranges could be reliably interpolated from the data . . . ."  (*Id.* at 2.)  Based on the data provided by such surveys, Plaintiffs could "construct annual estimates of the pay gap between workers at the major oil companies and general industry at various benchmark positions, and for managerial, professional, and technical workers as a whole."  (*Id.* at 6.)  "A strong correlation between the timing of salary policy announcements [by Defendants] and subsequent changes in the relative pay of MPT workers at the major oils as a whole would provide direct evidence of the combined effect of market power and the information sharing systems of [Defendants] in affecting salary trends in the industry."  (*Id.*)

Professor Card's declaration does not address the main question confronting the Court – whether members of the Proposed Class are sufficiently cohesive with respect to the employment opportunities available to them.  The declaration refers to cross-industry data concerning "benchmark positions," data which presumably concerns different employers depending on the particular position surveyed.  It proposes "construct[ing] annual estimates of the pay gap between workers at the major oil companies and general industry at various benchmark positions" without indicating the parameters and nature of the "general industry."  It states that similar estimates can be constructed "for managerial, professional, and technical workers as a whole" without explaining whether job opportunities for MPT employees are sufficiently similar so that they should be considered collectively.  Thus, even in light of Professor Card's declaration, Plaintiffs fail to demonstrate cohesiveness in satisfaction of (b)(2).

### d.    Whether a Finding That Plaintiffs' Proposed Class Is Not Cohesive Conflicts with *Todd v. Exxon*

Plaintiffs argue that a finding that the Proposed Class is not cohesive would conflict with *Todd* because the Second Circuit Court of Appeals found Plaintiffs had sufficiently stated a claim.  Rather than conflict with *Todd*, however, a denial of Plaintiffs' class certification motion would give effect to the concerns expressed by the Second Circuit Court of Appeals.  The *Todd* court explicitly noted that "[i]ssues regarding class certification under Fed. R. Civ. P. 23 are not addressed in the district court's opinion or in the litigants' briefs[, and] [t]he only issue before the Court is whether plaintiff states a claim under Fed. R. Civ. P. 12(b)(6)." *Todd*, 275 F.3d at 195.  Because the current motion concerns class certification, a different inquiry is required.  The Court may "probe behind the pleadings" and "make whatever factual and legal inquiries are necessary under Rule 23." *Newton*, 259 F.3d at 166 (internal quotations omitted).  For the reasons already discussed, including those addressed by the *Todd* court, Plaintiffs have failed to demonstrate cohesiveness in satisfaction of (b)(2).

16

### C.     Judge Hughes's Discovery Order

#### 1.     Standard of Review

Local Civil Rule 72.1(c)(1)(A) and Federal Rules of Civil Procedure Rule 72(a) provide

that a Magistrate Judge's ruling on a non-dispositive motion will be set aside only if the order is

"clearly erroneous or contrary to law."  Such rulings are "entitled to great deference and is

reversible only for abuse of discretion."  *Kresefky v. Panasonic Commc'ns. & Sys. Co.*, 169

F.R.D. 54, 64 (D.N.J. 1996).

#### 2.     Whether Judge Hughes's December 29, 2004 Order Was Clearly Erroneous or Contrary to Law

Plaintiffs argue that Judge Hughes's December 29, 2004 Order denying their application

for supplemental discovery was in error.  Defendants, in their opposition to Plaintiffs' motion for

class certification pursuant to Rule 23(b)(1) and (b)(2), argued that the Proposed Class was not

cohesive because the "proof supporting an injunction with respect to one plaintiff would not

support an injunction with respect to another class member occupying a different job and

therefore employed in a different market."  (Def. Opp. Br. at 23.)  According to Plaintiffs:

> The supplemental discovery that plaintiffs sought in their November 23rd letter
> application was designed to demonstrate not only that defendants' conduct was
> carried out generally with respect to the class as a whole, making it directly
> pertinent under Rule 23(b)(2), but also to demonstrate, as the Second Circuit
> allowed them to do, that defendants *have* market power over their MPT
> employees and that, by extension, this group of employees have the characteristics
> of a 'class' that makes certification under rule 23 appropriate.

(Pl. Br. in Supp. of Appeal at 6.)  "Specifically, . . . plaintiffs requested permission to

collect data both from the defendants and from non-party Towers Perrin that would

permit plaintiffs to measure whether the relative pay of oil industry employees was

reduced over time as compared to employees with comparable skills sets in general

industry."  (*Id.* at 7.)

The Court finds that Judge Hughes's order should be affirmed for two reasons.

First, the supplemental discovery that Plaintiffs request does not address the central issue

before this Court – whether members of the Proposed Class are sufficiently cohesive with respect to the employment opportunities available to them.  The supplemental discovery that Plaintiffs request concerns the exercise of market power, rather than the proper definition of the relevant market.  Second, Defendants did not raise any new factual issues in their opposition to Plaintiffs' current motion.  The facts relevant to Plaintiff's current motion were already discoverable for purposes of Plaintiffs' first motion for class certification under Rule 23(b)(3).  Judge Hughes's denial of Plaintiffs' application for further supplemental fact discovery was therefore not clearly erroneous nor contrary to law.

## III.    CONCLUSION

For the above reasons, Plaintiffs' motion for class certification pursuant to Federal Rules of Civil Procedure Rule 23(b)(1) and (b)(2) is denied, and Magistrate Judge Hughes's December 29, 2004 Order denying Plaintiffs' application for supplemental discovery is affirmed.  An appropriate form of order is filed herewith.

Dated:  January 4, 2006

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

18