<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: COMPENSATION OF MANAGERIAL, PROFESSIONAL AND TECHNICAL EMPLOYEES ANTITRUST LITIGATION | MDL DOCKET NO. 1471<br><br>MASTER DOCKET NO. 02-CV-2924 (GEB)<br><br>**OPINION** |

<u>**BROWN, District Judge**</u>

This matter comes before the Court upon Plaintiffs' motion for reconsideration pursuant to Local Civil Rule 7.1(i). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. The Court, having considered the parties' submissions, and for the reasons set forth below, will deny Plaintiffs' motion for reconsideration.

**I.    BACKGROUND**

On January 4, 2006, this Court denied Plaintiffs' motion for class certification pursuant to Federal Rules of Civil Procedure Rule 23(b)(1) and (b)(2). Plaintiffs now seek reconsideration of the Court's denial of that motion. The Court has already described the factual and procedural background to this case in its January 4, 2006 opinion and will assume familiarity with that opinion.

**II.    DISCUSSION**

    **A.    Standard of Review for Motions for Reconsideration**

To succeed on a motion for reconsideration, a party must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir.

1999) (citations omitted).  The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter.  *See United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).  *See also* L. Civ. R. 7.1(i) ("[a] brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed . . .").

Reconsideration is not available for a party seeking merely to reargue matters already addressed by the Court.  *See e.g. Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("[m]ere disagreement with a decision of the District Court should normally be raised through the appellate process and is inappropriate on a motion for reargument"); *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998) ("[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple") (citations omitted); *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) ("[a] party seeking reconsideration must show more than a disagreement with the Court's decision").  The standard for reconsideration is high, and motions for reconsideration should be granted "very sparingly." *United States v. Jones*, 158 F.R.D. 309, 314 (D.N.J. 1994).

> B. **Whether the Court Overlooked the Second Circuit Court of Appeals' Decision That Plaintiffs May Prove Market Power Through Direct Evidence of Actual Adverse Effects on Competition**

Plaintiffs argue that the Court overlooked a key holding in *Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001).  In *Todd*, the Second Circuit Court of Appeals stated that "[i]f a plaintiff can show that a defendant's conduct exerted an actual adverse effect on competition, this is a strong indicator of market power[,]" and "arguably is more direct evidence of market power than calculations of elusive market share figures."  *Todd*, 275 F.3d at 206.  The court held that Plaintiffs are therefore entitled to prove Defendants' market power by using direct evidence of actual anti-competitive effects resulting from Defendants' alleged information sharing.  Plaintiffs argue that the Court overlooked this ruling.  The Court disagrees.

1.  **Plaintiffs' Claims and the Proposed Class**

In deciding Plaintiffs' motion for class certification, the Court considered the nature of Plaintiffs' claims. The Court noted that "[i]n litigating their claims, Plaintiffs will have to prove the relevant product market . . . ." Mem. Op. at 5. "Here, the relevant product market would be the market for employment opportunities available to members of the Proposed Class." *Id.*

Plaintiffs would indeed have to prove the relevant product market, even if they use the direct evidence method to prove their claims. Under that approach, Plaintiffs can avoid "calculations of elusive market share figures." *Todd*, 275 F.3d at 206. But even using the direct evidence method, at a minimum, Plaintiffs must define the parameters of the market in question. Indeed, the *Todd* opinion and the cases to which it cites in support of the direct evidence method all presume the existence of some definable market. *See id.* ("[i]f a plaintiff can show that a defendant's conduct exerted an actual adverse effect on competition, this is a strong indicator of *market* power") (emphasis added); *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 97-98 (2d Cir. 1998) ("[m]onopoly power, also referred to as *market* power . . . may be proven directly by evidence of the control of prices or the exclusion of competition, or it may be inferred from one firm's large percentage share of the relevant market") (emphasis added); *Toys "R" Us, Inc. v. Fed. Trade Comm'n*, 221 F.3d 928, 937 (7th Cir. 2000) ("the share a firm has in a properly defined relevant market is only a way of estimating *market* power, which is the ultimate consideration") (emphasis added); *K.M.B. Warehouse Distributors, Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 127 (2d Cir. 1995) ("'[p]laintiff bears the initial burden of showing that the challenged action has had an actual adverse effect on competition as a whole in the *relevant market* . . .'") (quoting *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 543 (2d Cir.), *cert. denied*, 510 U.S. 947 (1993)) (emphasis added); *Capital Imaging*, 996 F.2d at 543 ("[i]nsisting on proof of harm to the *whole market* fulfills the broad purpose of the antitrust law that was enacted to ensure competition in general, not narrowly focused to protect individual competitors") (emphasis added). After considering the class that Plaintiffs proposed, the Court

found that members of that class were not cohesive because different job opportunities were available to them so that they constituted different markets. Mem. Op. at 10.

### 2. Professor Card's Declaration

The Court further addressed Plaintiffs' direct evidence approach in considering Professor Card's declaration, which outlined Plaintiffs' proposed method of proof. According to Professor Card, "'[a] strong correlation between the timing of salary policy announcements [by Defendants] and subsequent changes in the relative pay of MPT workers at the major oils as a whole would provide direct evidence of the combined effect of market power and the information sharing systems of [Defendants] in affecting salary trends in the industry.'" Mem. Op. at 15 (quoting Card Decl. at 6). But even under the direct evidence method of proof described by Professor Card, Plaintiffs would have to provide evidence of actual adverse effects within a *specific market*. Plaintiffs failed to show that members of the proposed class are cohesive in that respect, namely, that they face similar job opportunities as a class.

In arguing that the Court's denial of class certification is inconsistent with the *Todd* opinion, Plaintiffs mistake the scope of both decisions. The Second Circuit Court of Appeals stated in *Todd* that Plaintiffs may prove their case using a direct evidence approach. This Court recognizes that. This is not to say that Plaintiffs may, however, do so on a class-wide basis for the broad, diverse and non-cohesive class that they proposed. The *Todd* court did not decide the issue of class certification. *See Todd*, 275 F.3d at 202 n.5 ("[t]hat this large class might have difficulty meeting the predominance and typicality requirements for Rule 23 certification, however, does not indicate that plaintiff fails to state a claim upon which relief can be granted").

### C. Whether the Court Overlooked Plaintiffs' Argument That Considering the Effects of an Injunction on Members of the Proposed Class Is a Merits Issue That Is Inappropriate to Decide at This Stage

Plaintiffs argue that in denying their motion for class certification, the Court wrongly assumed that "some employees in the class are 'employed in competitive job markets.'" (Pls.' Br. at 8 (quoting Mem. Op. at 14).) According to Plaintiffs, "[t]his Court's ruling that an injunction would not benefit all class members improperly presumes that Plaintiffs will lose on the merits of their claim." (*Id.* at 8-9.) In other words, Plaintiffs argue that whether an injunction would benefit or harm members of the proposed class is a merits issue to be decided by a fact-finder, and denial of class certification because of potentially different effects is inappropriate.

Plaintiffs made the same argument in their reply brief in support of their motion for class certification. (Am. Reply Br. at 24-26, December 28, 2004.) The Court addressed this argument in denying Plaintiffs' motion. *See e.g.* Mem. Op. at 16 ("[t]he Court may 'probe behind the pleadings' and 'make whatever factual and legal inquiries are necessary under Rule 23'") (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001)). Reconsideration of this issue is therefore inappropriate.

### III. CONCLUSION

For the above reasons, Plaintiffs' motion for reconsideration is denied. An appropriate form of order is filed herewith.

s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
